389 S.C. 528 (2010)
698 S.E.2d 835
Savannah K. JOHNSON, Personal Representative of the Estate of Susan Johnson, Respondent,
v.
HORRY COUNTY SOLID WASTE AUTHORITY, Appellant.
No. 4716.
Court of Appeals of South Carolina.
Heard May 19, 2010.
Decided July 28, 2010.
Rehearing Denied September 24, 2010.
*530 Douglas C. Baxter, of Myrtle Beach and Mason A. Summers, of Columbia, for Appellant.
Luke A. Rankin, of Conway, for Respondent.
KONDUROS, J.
Horry County Solid Waste Authority (the County) appeals the trial court's decision to suppress evidence regarding the decedent's blood alcohol level in this wrongful death action. The County also claims the trial court erred in referencing the South Carolina Commercial Driver's License Manual (the CDL Manual) in its charge to the jury warranting a new trial. We affirm.

*531 FACTS
Susan Johnson (Decedent) was involved in a one-car, roll-over accident around 4 a.m. on January 5, 2005. Decedent drove off the right side of the road and then over-corrected, causing the accident. Her vehicle, a black sports utility vehicle (SUV), came to rest facing oncoming traffic and inside the safe zone of the road.[1] Tommy Bell approached Decedent's vehicle driving a Horry County Solid Waste Authority Truck. Bell testified he saw Johnson's vehicle, then a blur, and then he felt a bump. He pulled over and saw Decedent's body lying on the side of the road and called 911. Decedent suffered catastrophic injuries having been crushed between the County's truck and her SUV. Her daughter, Savannah Johnson, brought a wrongful death action against the County as person representative of Decedent's estate.
At trial, Johnson made a motion in limine to exclude evidence of Decedent's blood alcohol level, which was .14, and evidence showing traces of marijuana and cocaine in Decedent's bloodstream. Johnson argued no independent evidence linked Decedent's intoxication to the second accident. At the trial court's request, the County attempted to establish such a connection. The County raised several pieces of evidence. First, Lieutenant Robert Lee, a South Carolina State Trooper and head of the Major Accident Investigation Team for the Pee Dee Region, had testified in his deposition that Decedent's single-car accident occurred because she was under the influence of alcohol or drugs and ran off the shoulder of the road. He stated fatigue may have also been a factor. The County also argued its expert, James Middleton, would testify Decedent was standing on the white line separating the safe zone and road at the time of impact and that her intoxication would have impaired her judgment. Finally, the County also indicated the cocaine and marijuana in Decedent's system had been ingested within hours of the accident.[2]
*532 Johnson maintained Lee's explanation for the first accident was not really independent but was colored by his knowledge of Decedent's toxicology report. Johnson also argued Middleton's deposition testimony was ambiguous and did not give a definite opinion as to where Decedent was standing when she was struck.
After hearing arguments, the trial court granted Johnson's request to exclude the evidence. The trial court concluded no evidence indicated Decedent's intoxication contributed to the second accident and the evidence was substantially more prejudicial than probative under Rule 403, SCRE. The trial court indicated the motion could be reconsidered upon presentation of sufficient evidence that Decedent's intoxication contributed to the accident.
Johnson called Lieutenant Lee at trial.[3] He testified his investigation and conclusions focused on a tire print found on the white line separating the road from the safe zone. He testified the tire print matched the print of the County's truck and such a print would only be made when a vehicle had an impact against another object sufficient to create a vibration, stamping the print onto the line. Lieutenant Lee further testified in his opinion, based on Decedent's injuries and the damage to the County's truck and the SUV, Decedent was not in the road at the time she was struck.
The redacted deposition testimony of pathologist Dr. Edward Proctor, Jr. was read into the record. He testified Decedent's injuries were consistent with her being hit on the right side of her body and being rotated around as the truck pinned her against her SUV. Dr. Proctor also stated Decedent would have been standing relatively close to her car for the injuries to have occurred the way they did. He opined this would likely mean she was either standing inside or no further than on the white line delineating the road from the safe zone.
*533 Another expert in accident reconstruction, Woodrow Poplin, testified next. Poplin stated in his expert opinion, the County's truck had drifted over into the safe zone and struck Decedent.[4] He opined Decedent was not across the white line separating the road and safe zone but was just inside it, right at its edge. Like Lee, Poplin believed the tire print on the white line was made by the County's truck. Poplin also testified he believed Decedent had moved her vehicle into the safe zone during the time between the first and second accidents.
At this time, the County again sought to have the drug and alcohol evidence admitted into the record, arguing Poplin's testimony that Decedent had moved her SUV should change the trial court's analysis. The County maintained Decedent's driving the vehicle into an unsafe position, not far enough off the road, made her driving under the influence a contributing factor in the second accident. The trial court again excluded the evidence concluding the link between Decedent's intoxication and the second accident was too tenuous.
Decedent's ex-husband testified he saw her at a local bar and grill earlier in the evening on the night of the accident. The two spoke briefly, but he did not observe Decedent's activities and did not see her consume any alcohol.
The defense called its accident reconstruction expert, James Middleton. Middleton disagreed with the other experts regarding the tire print. Based on his analysis, the tire print was not necessarily made by the County's truck. In his opinion, Decedent was standing in the road "straddling the white line" at the time she was struck.
Johnson had asked Bell about the amount of sleep he had gotten prior to the accident and attempted to establish through Middleton that Bell's fatigue could have been a factor in the second accident. In allowing such questioning, the trial court assured the County that it could likewise question witnesses about circumstantial evidence of Decedent's alcohol consumption. In response, the County indicated no witness could testify to seeing Decedent consume alcohol, but her *534 mere presence at the bar prior to the accident was at least circumstantial evidence of her intoxication.
When that discussion was concluded, the parties stipulated Middleton would have testified the level of alcohol in Decedent's bloodstream would have impaired her judgment and that her intoxication contributed to the second accident. The County did not raise the blood alcohol evidence again.
The jury found the County eighty-five percent negligent for Decedent's injuries and found Decedent fifteen percent negligent and awarded damages in the amount of $500,000.[5] This appeal followed.

LAW/ANALYSIS

I. Admission of Blood Alcohol Evidence
The County contends the trial court erred in concluding Decedent's blood alcohol was inadmissible because insufficient evidence linked her intoxication to the second accident, making the evidence substantially more prejudicial than probative. We disagree.
Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue. Rule 401, SCRE; Rule 402, SCRE. However, otherwise relevant evidence may be excluded when its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest a decision on an improper basis." State v. Owens, 346 S.C. 637, 666, 552 S.E.2d 745, 760 (2001) overruled on other grounds by State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005). "An appellate court reviews Rule 403 rulings pursuant to an abuse of discretion standard and gives great deference to the trial court." Lee v. Bunch, 373 S.C. 654, 658, 647 S.E.2d 197, 199 (2007). "A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances." State v. Adams, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct.App.2003).
*535 One of the leading cases in this area is Lee, 373 S.C. at 654, 647 S.E.2d at 197. In Lee, the South Carolina Supreme Court determined evidence of Lee's blood alcohol content was relevant and admissible.[6]Id. at 659, 647 S.E.2d at 200. In making this determination, the court relied upon corroborating evidence that Lee had been drinking at the time of the accident and that his intoxication was a cause of the accident. Id. at 658-59, 647 S.E.2d at 199-200. Lee admitted to drinking shortly before the wreck and expert testimony showed Lee's blood alcohol level would have impaired his judgment and ability to operate a motorcycle. Id. An eyewitness also saw Lee going over the speed limit, and the accident occurred left of the center line. Id. at 659, 647 S.E.2d at 200.
Kennedy v. Griffin, 358 S.C. 122, 595 S.E.2d 248 (Ct.App. 2004), stands in contrast. In Kennedy, a tractor-trailer turned left in front of Kennedy as he approached in his pickup truck. Id. at 125-26, 595 S.E.2d at 249. Kennedy struck the eighteen-wheeler on its rear set of tires. Id. According to a witness, Kennedy had enough time to see the truck and apply his brakes sooner than he did. Id. at 126, 595 S.E.2d at 250. The other driver indicated he believed he had a safe distance to make the turn, while Kennedy testified the tractor-trailer bolted out in front of him. Id. This court reversed the trial court's admission of toxicology reports showing the presence of marijuana in Kennedy's bloodstream. Id. at 128-29, 595 S.E.2d at 251. The court reasoned no evidence regarding the level of marijuana in Kennedy's system or how long it had been present was presented. Id. at 128, 595 S.E.2d at 251. Also, no witnesses testified Kennedy smelled of marijuana and no marijuana was found at the accident scene. Id. Furthermore, the circumstances of the accident did not "necessarily suggest that [Kennedy] was driving under an impairment." Id. Under those circumstances, the court concluded, the danger of unfair prejudice substantially outweighed the probative value of the toxicology report. Id. at 128-29, 595 S.E.2d at 251.
This case lies between Lee and Kennedy. We have more corroborating evidence than in Kennedy. The toxicologist's unredacted deposition testimony indicated Decedent had ingested *536 marijuana and cocaine within hours of her death. That testimony also revealed Decedent's blood alcohol level to be well in excess of the limit for driving under the influence. Decedent's ex-husband testified she was at a bar from approximately midnight until 4 a.m. the night of the accident, and Lieutenant Lee testified in his deposition that the circumstances of Decedent's first accident indicated it occurred because she was intoxicated or possibly fatigued. Furthermore, Middleton, at trial, placed Decedent at least partially in the road at the time of impact.
However, no one witnessed the first or second accident, and there is no "smoking gun" like in Lee, when the accident inarguably occurred to the left of the center line. Taking the second accident independently, the County presented no evidence Decedent's intoxication contributed to her being struck by the County's truck. In attempting to establish the link between intoxication and the second accident, no expert testimony was proffered for the trial court's consideration regarding how her judgment would have been impaired with respect to staying out of the road. Almost all the expert testimony placed Decedent within the safe zone at the time of impact. Even Bell testified he did not see Decedent in the road. Furthermore, although Decedent's ex-husband placed her at a bar prior to the accident, he did not testify to seeing her consume any alcohol.
Essentially, the jury was presented with a battle of the experts. Middleton testified that in his opinion, Decedent was straddling the white line when she was struck. However, that opinion, as well as the other expert opinions, was rendered on the physical evidence at the scene of the accident. Her intoxication would not have changed the expert opinion of any of the witnesses, and the jury simply had to choose which expert they believed based on their explanations of how the accident occurred.
Under the circumstances, evidence of Decedent's blood alcohol level was relevant and had some probative value. However, giving due deference to the trial court's decision, we agree the prejudice created by admitting Decedent's blood alcohol level substantially outweighed the probative value. Therefore, the trial court's ruling excluding the evidence is affirmed.

*537 II. Jury Charge
The County takes exception to the portion of the trial court's jury charge referencing the CDL Manual. The County argues the trial court erred in charging from the CDL Manual because doing so imposed a higher standard of care on Bell as a commercial driver when the CDL Manual guidelines do not carry the force of law. We disagree.
The objectionable portion of the jury charge is as follows:
I charge you that South Carolina's commercial driver[']s license program requires high standards and skills of commercial motor vehicle operators.
In reference to staying centered in a lane, I charge you that the [CDL] Manual states that a driver needs to keep the vehicle centered in the lane to keep safe clearance on either side. If the vehicle is wide, there is little room to spare.
In reference to how far ahead to look, the [CDL] [M]anual states that most good drivers look twelve to fifteen seconds ahead. That means looking ahead the distance you will travel in twelve to fifteen seconds. At lower speeds, that's about one block. At highway speeds it's about a quarter of a mile assuming [visibility] permits. If you're not looking that far ahead, you may have to stop too quickly to make the quick lane changes.
The County lodged an objection stating: "We talked earlier about the charge, about the South Carolina Commercial Driver's License Program requires higher standards, skills, and I don't think the mere fact that someone has a CDL they then have a higher standard of care than anyone else on the roadway." Johnson argues this issue is not preserved for our review because the County did not specifically state the CDL Manual does not carry the weight of law. We disagree. Questioning whether the CDL Manual established a particular standard of care, as the common law or statute may, implicitly calls into question the force of the CDL Manual as something less than law. See State v. Hamilton, 344 S.C. 344, 361, 543 S.E.2d 586, 595 (Ct.App.2001) overruled on other grounds by State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005) ("In order to preserve for review an alleged error, the objection should be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the *538 trial [court]."). Therefore, we will proceed to the merits of this issue.
The information contained in this charge was already introduced through the testimony of Bell himself and Poplin. Nevertheless, jury instructions are to charge the current and correct law of the state, and the County is correct in pointing out the CDL Manual does not carry the force of law. See McCourt v. Abernathy, 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995) ("The trial judge is required to charge only the current and correct law of South Carolina."). Consequently, the trial court erred in referencing the manual and its guidelines when charging the jury.
In reviewing jury charges for an alleged error, the appellate court "must consider the court's jury charge as a whole in light of the evidence and issues presented at trial. If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error." Keaton ex rel. Foster v. Greenville Hosp. Sys., 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999).
In this case, the charge, read as a whole, indicates the standard of care to establish negligence is that of a reasonable person. The trial court instructed:
Negligence means that a person did not use the same amount of care that a person of ordinary reason and prudence would exercise in the same circumstances.... It can be said that a negligent person has done something that a reasonable person would not have done, if faced with the same situation; or, on the other hand failed to do something that a reasonable person would have done if faced with the same situation.... Now that is negligence.
The trial court further charged the jury regarding the laws of South Carolina pertaining to the operation of a motor vehicle.
I charge you under South Carolina law that the driver of an automobile also has a duty to keep the automobile under proper control so that the driver is able to slow down, stop, or turn the automobile to avoid colliding with other vehicles, pedestrians, and objects lawfully on the road.

*539 I charge you that the driver of a vehicle approaching a person engaged about an automobile in the highway owes that person the duty to exercise reasonable care to avoid injuring him.
I charge you that the first duty of a motorist is to keep a sharp lookout to discover presence of those who might be in danger, and if he performs that duty and discovers that someone is in danger, a second duty arises to use every possible available means to avert injury and, if [a] motorist fails to perform that duty, his negligence is a proximate and immediate cause of injury.
I charge you that the discovery of danger by the defendant or the duty to discover it in exercise of due care includes the duty under the circumstances to appreciate peril in time to take steps necessary to avert an accident.
I charge you that a driver on the public roads owes a duty to keep a proper lookout for persons or objects upon the highway. That duty is not merely one of looking, but one of seeing.
I charge you that a person using the public roadways of this state owe a duty to exercise ordinary care at all time to avoid an accident.
These charges all address the care that any driver is required to exhibit in operating a motor vehicle. Furthermore, the trial court's general charge on the meaning of negligence comports with requiring a driver to use the ordinary care another driver would use under the same circumstances. On the whole, the trial court's jury instructions properly stated the appropriate standard of care so that we do not believe the reiteration of some guidelines from the CDL Manual prejudiced the County. Accordingly, we do not believe the trial court committed reversible error in including the CDL Manual reference in the jury instructions.

CONCLUSION
We affirm the trial court's decision to exclude evidence of Decedent's blood alcohol level because a sufficient link was not established between her intoxication and the second accident and because the probative value of the evidence was substantially outweighed by the likelihood of unfair prejudice. Additionally, *540 we find the trial court did not commit reversible error by referencing the CDL Manual in the charge when the instructions, as a whole, accurately conveyed the proper standard of care to be applied by the jury. Based on all of the foregoing, the rulings of the trial court are
AFFIRMED.
HUFF and THOMAS, JJ., concur.
NOTES
[1] This area may commonly be called the emergency lane or shoulder of the road, but we will refer to it as the safe zone. The safe zone in this case is the area to the right side of the white line demarking the end of the actual road.
[2] The pathologist's testimony on this point was not specifically brought to the attention of the trial court at this time, but the pathologist's unredacted deposition was proffered and it supports this contention. His redacted deposition was read into the record.
[3] Lieutenant Lee was technically a First Sergeant the day he testified at trial with his promotion due to take effect four days later.
[4] Bell did not dispute evidence that his tire was over the white line demarcating the road from the safe zone.
[5] This amount was capped at $300,000 pursuant to the South Carolina Tort Claims Act, Section 15-78-120(1) of the South Carolina Code (2005).
[6] This decision affirmed the trial court.