# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Martha Foster Watts, Appellant,

v.

Ricky W. Chastain, Sheriff Laurens County, South Carolina, Respondent.

Appellate Case No. 2019-001514

Appeal From Laurens County
Donald B. Hocker, Circuit Court Judge

Opinion No. 5952
Submitted October 3, 2022 – Filed November 23, 2022

**AFFIRMED**

Thomas J. Thompson, of Townsend & Thompson, LLP, of Laurens, for Appellant.

Carly H. Davis and Russell W. Harter, Jr., both of Chapman, Harter & Harter, P.A., of Greenville, for Respondents.

**THOMAS, J.:** This is a personal injury case filed by Martha Foster Watts against the Sheriff of Laurens County involving a car accident. At trial, the court admitted a video into evidence over Watts' objection. On appeal, Watts argues she is entitled to a new trial because (1) the video was unfairly prejudicial to the verdict and (2) defense counsel's closing argument unfairly prejudiced the outcome. We affirm.

**FACTS**

The night of August 15, 2013, Watts was traveling on Highway 76 in South Carolina when her vehicle collided with another vehicle that had, in a matter of seconds before, been involved in a collision with a Laurens County Sheriff's Deputy.[1] Watts alleged personal injuries and asserted a negligence claim against Ricky W. Chastain, the Sheriff of Laurens County.[2] Chastain denied liability under the South Carolina Tort Claims Act and alleged comparative fault on behalf of Watts.

Prior to trial, Watts filed a motion in limine, objecting to Chastain's use of a copy of a nearby private recycling business' surveillance video on the grounds that (1) it was not an exact copy of the original video; (2) Chastain did not show the original video was unavailable through no fault of his own; (3) it was altered in substance and edited; (4) the playback speed was inaccurate; (5) it did not show the collisions at issue; (6) it did not fairly and accurately represent the time between the first and second collisions; (7) the image was too blurry to be useful to the jury; and (8) it was inherently prejudicial to Watts.

During the trial, Watts filed a motion to suppress the video and all evidence derived from it. After an in-camera hearing, the court found the video was admissible because the probative value outweighed any unfair prejudice to Watts. Immediately before closing arguments, the court instructed counsel that they could argue what was on the video, but they could not add to it. During defense counsel's closing argument, the court overruled Watts' objections that defense counsel's comments on the video disregarded the court's instruction not to add anything that was not depicted on the video.

At the conclusion of the trial, the jury found Chastain was not negligent. Watts filed a motion for a new trial or judgment notwithstanding the verdict (JNOV)

---

[1] Deputy Barton Holmes was the officer involved in the first collision and his report stated that collision occurred at 10:37 pm. In a post-incident interview with Trooper (then Corporal) Al Duncan of the South Carolina Highway Patrol, Holmes said the second collision occurred five to ten seconds after the first collision. The other driver testified the second collision occurred two seconds after the first collision.

[2] Watts filed her initial complaint against the Laurens County Sheriff's Department; however, she filed an amended complaint naming only Chastain, as the Sheriff of Laurens County.

pursuant to Rules 59 and 60 of the South Carolina Rules of Civil Procedure. Watts argued the surveillance video was improperly admitted into evidence at trial because the video shown to the jury at trial was a copy of the original video. She also argued defense counsel made a prejudicial and improper closing argument.

After a hearing, the trial court filed its order denying Watts' motions. The court found the video complied with Rules 1001 to 1004, SCRE, because (1) the video recorded by Trooper Duncan was a duplicate of the images shown on the surveillance video; (2) there was no genuine question raised as to the authenticity of the original video; and (3) the original video was never in the possession of Chastain and is no longer available for reasons fully explained at trial. The court also found the video was relevant evidence because it provided information and evidence as to the position of the vehicles, the timing of the two collisions at issue, the roadway conditions, and whether the motorists had their lights on. Finally, the court found there was no prejudice in defense counsel's closing argument and any remarks by counsel did not deprive Watts of a fair trial. This appeal followed.

**STANDARD OF REVIEW**

The grant or denial of a motion for a new trial lies within the sound discretion of the trial court. *RRR, Inc. v. Toggas*, 378 S.C. 174, 182, 662 S.E.2d 438, 442 (Ct. App. 2008). This court's standard of review is limited to determining whether there was an abuse of discretion. *BB&T v. Taylor*, 369 S.C. 548, 551, 633 S.E.2d 501, 502-03 (2006). "An abuse of discretion arises where the judge issuing the order was controlled by an error of law or where the order is based on factual conclusions that are without evidentiary support." *Id.* "In deciding whether to assess error to a court's denial of a motion for a new trial, we must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Vinson v. Hartley*, 324 S.C. 389, 405, 477 S.E.2d 715, 723 (Ct. App. 1996).

"In deciding a motion for JNOV, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party . . . ." *Gastineau v. Murphy*, 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998). "[I]f more than one inference can be drawn, the case must be submitted to the jury." *Id.* "A motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict." *Id.* The jury's verdict will not be overturned if any evidence exists that sustains the factual findings implicit in its decision. *Shupe v. Settle*, 315 S.C. 510, 515, 445 S.E.2d 651, 654 (Ct. App. 1994).

## LAW/ANALYSIS

### I.      Video Evidence

Watts argues she is entitled to a new trial because the video was unfairly prejudicial to her.  We disagree.

### A.      Rules 1001 to 1004, SCRE

Rule 1001(2), SCRE, provides "photographs" include "video tapes, motion pictures or other similar methods of recording information."  Rule 1001(4), SCRE, defines a "duplicate" as "a counterpart produced by the same impression as the original . . . by mechanical or electronic re-recording . . . or by other equivalent techniques which accurately reproduces the original."  Rule 1002, SCRE, states to prove the content of a recording, the original recording should be entered into evidence.  Rule 1003, SCRE, allows a "duplicate" to be admitted "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."  Rule 1004(1), SCRE, lists an exception to the original recording requirement and provides a copy may be admitted if all originals are lost or have been destroyed without the fault of the party desiring to prove the fact.  *See Vaught v. Nationwide Mut. Ins. Co.*, 250 S.C. 65, 68-69, 156 S.E.2d 627, 628-29 (1967) (stating secondary evidence is only admissible when "the primary evidence of the fact to be proved is satisfactorily shown to have been lost or destroyed without the fault of the party desiring to prove the fact . . . ." (quoting *W.C. Beaty & Co. v. S. Ry. Co.*, 80 S.C. 527, 530, 61 S.E. 1006, 1007 (1908))).  "The preliminary inquiry as to whether there had been sufficient evidence tending to prove the loss, destruction or unavailability of an original document to justify the admission of secondary evidence is an inquiry, the answer to which, in large measure, is within the discretion of the trial [court] . . . ."  *Windham v. Lloyd*, 253 S.C. 568, 573, 172 S.E.2d 117, 119 (1970).

Watts argues the video does not qualify as an admissible "print" or "duplicate" of the original, under Rules 1001, 1002, and 1003 of the South Carolina Rules of Evidence.  Watts asserts Matthew Cagle, the owner of the recycling business, testified to facts proving that the video is altered from the original surveillance video because Cagle fast forwarded through some of the footage during the copying by Trooper Duncan to get to the time he wanted to start recording.  Trooper Duncan also testified the video jumps a little because he did not need to

record much of the surveillance before and after the collisions. Also, Watts asserts Trooper Duncan testified the video included imperfections that were not on the original surveillance video – images of himself reflected on the monitor while he copied the surveillance video and the process of copying the surveillance as it played on the monitor created a glare that was not on the original footage. Cagle also testified there was a glare on the recording.

At trial, Cagle testified the system "records in a loop, and about every six months it records over itself." He also stated there was no cassette tape he could give Trooper Duncan because it recorded on a hard drive and the only way to get a copy of the recording was for Trooper Duncan "to bring a tripod like this right here and set a camcorder on it to record the images off the monitor." Trooper Duncan testified Cagle told him there was no way to get the data off the hard drive and he used the camcorder to record the surveillance footage because he realized the evidence could be lost. Watts did not argue the original was not lost or that Chastain lost the original. Watts also did not argue the video was not a copy of the original, just that the video is fast-forwarded to the time of the collisions, does not show the collisions, and the quality is low.

The trial court found the video complied with Rules 1001 to 1004, SCRE, because (1) the video recorded by Trooper Duncan was a duplicate of the images shown on the original surveillance video; (2) there was no genuine question raised as to the authenticity of the original video; and (3) the original video was never in the possession of Chastain and is no longer available for reasons fully explained at trial. We find the evidence supports this conclusion; thus, there was no abuse of discretion by the trial court in admitting the video. *See BB&T*, 369 S.C. at 551, 633 S.E.2d at 503 ("An abuse of discretion arises where the judge issuing the order was controlled by an error of law or where the order is based on factual conclusions that are without evidentiary support.").

## B.      Rule 901, SCRE

Rule 901(a), SCRE, requires authentication as a condition precedent to the admissibility of evidence and provides it "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." It further provides that authentication may be made by "[t]estimony that a matter is what it is claimed to be." Rule 901(b)(1), SCRE.

In *State v. Brown*, involving the authentication of Global Positioning System (GPS) records, our supreme court "emphasize[d] that '[n]o elaborate showing of

the accuracy of the recorded data is required'; however, the State must make some showing to authenticate the records." 424 S.C. 479, 490, 818 S.E.2d 735, 741 (2018) (quoting *People v. Rodriguez*, 224 Cal. Rptr. 3d 295, 309 (Cal. Ct. App. 2017)). The court held a witness need not be an expert, but "should have experience with the electronic monitoring system used and provide testimony describing the monitoring system, the process of generating or obtaining the records, and how this process has produced accurate results for the particular device or data at issue." *Id.* at 492, 818 S.E.2d at 742. In *Rodriguez*, cited by the *Brown* court, the court also considered the authentication of GPS records and stated:

> It is settled [that] computer systems that automatically record data in real time, especially on government-maintained computers, are presumed to be accurate. Thus, a witness with the general knowledge of an automated system may testify to his or her use of the system and that he or she has downloaded the computer information to produce the recording. No elaborate showing of the accuracy of the recorded data is required. Courts in California have not required "testimony regarding the 'acceptability, accuracy, maintenance, and reliability of . . . computer hardware and software'" in similar situations. . . . The rationale is that while mistakes may occur, such matters may be developed on cross-examination and should not affect the admissibility of the printout or recording of the data itself.

224 Cal. Rptr. 3d at 309 (quoting *People v. Dawkins*, 179 Cal. Rptr. 3d 101, 110 (Cal. Ct. App. 2014)).

Watts argues the video was not relevant and was prejudicial to her because the video's time stamp begins twenty minutes after the collisions occurred and does not show either of the collisions at issue. Watts asserts this unresolved time discrepancy bars authentication of the original video. She asserts Cagle had no training relevant to surveillance systems, four of his system cameras did not work at the time of the wreck, and eight of the cameras did not work at the time of the trial, yet he testified his system worked well. Thus, she argues Cagle's testimony is not adequate to authenticate the original video's accuracy. She also asserts Trooper Duncan could not authenticate the video because he lacked personal knowledge and could not testify the surveillance equipment kept reliable, accurate time.

Although the time stamp of the video begins twenty minutes after the collisions occurred, Cagle testified the system is reliable and the date and time stamp was accurate. He also testified the video was a recording of what played on his surveillance monitor and that no alteration of the video occurred between the time of the accident and the time Trooper Duncan recorded it with his camcorder. Rule 901(b)(1), SCRE, provides that authentication may be made by "[t]estimony that a matter is what it is claimed to be." The *Brown* court held a witness need not be an expert, but should have experience with the electronic monitoring system used and provide testimony describing the system. 424 S.C. at 492, 818 S.E.2d at 742. Also, Trooper Duncan testified the video was a true and accurate representation of what he recorded on his camcorder when he went to Cagle's business. Thus, we find Cagle and Trooper Duncan's testimony was sufficient to authenticate the video, and the court did not err in admitting it into evidence at trial.

## C.    Rule 403, SCRE

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. Our courts have defined unfair prejudice as "an undue tendency to suggest a decision on an improper basis." *Johnson v. Horry Cnty. Solid Waste Auth.*, 389 S.C. 528, 534, 698 S.E.2d 835, 838 (Ct. App. 2010) (quoting *State v. Owens*, 346 S.C. 637, 666, 552 S.E.2d 745, 760 (2001), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)). This court "reviews Rule 403 rulings pursuant to an abuse of discretion standard and gives great deference to the trial court." *Lee v. Bunch*, 373 S.C. 654, 658, 647 S.E.2d 197, 199 (2007). Thus, only in exceptional circumstances should this court reverse a trial court's decision regarding the comparative probative value and prejudicial effect of evidence. *Johnson*, 389 S.C. at 534, 698 S.E.2d at 838.

Watts argues the video is of such poor quality that its probative value is extremely low. She further asserts its probative value is far outweighed by its unfair prejudice, confusion of the issues, and tendency to mislead the jury because it is

silent[3], in black and white, and does not depict either of the collisions at issue. Watts argues the full effect of the unfair prejudice caused by the video is shown in the jury's finding that Deputy Holmes was not negligent in making his left U-turn, on an unlit and very dark stretch of road at night, without a siren, without overhead flashing lights or even a turn signal, and when there were at least three other vehicles following close behind him. Further, she argues it is undisputed that the collisions were only seconds apart, but the video was used to convince the jury that there was a longer time between impacts, so as to place liability on Watts.[4] She asserts the court erred a second time by denying her a new trial as a result of this unfair prejudice.

The relevant incidents were the two collisions, and the video captured the events that occurred relative to the time of the two collisions and were re-recorded in real time. Although the video does not show the actual impact of the collisions, the trial court found the video was relevant evidence because it provided information and evidence as to the position of the vehicles, the timing of the two collisions at issue, the roadway conditions, and whether the motorists had their lights on. Our standard of review of the trial court's admission of evidence is limited to determining whether there was an abuse of discretion. *Lee*, 373 S.C. at 658, 647 S.E.2d at 199. We find the evidence supports the trial court's conclusion that the video was relevant evidence because it provided information as to the position of the vehicles, the timing of the collisions at issue, the roadway conditions, and whether the motorists had their lights on. Thus, there was no abuse of discretion. *See BB&T*, 369 S.C. at 551, 633 S.E.2d at 503 ("An abuse of discretion arises where the judge issuing the order was controlled by an error of law or where the order is based on factual conclusions that are without evidentiary support.").

## II.    Closing Argument

Watts argues she is entitled to a new trial because defense counsel's closing argument unfairly prejudiced the outcome. We disagree.

"It has long been settled that closing arguments and objections thereto are left largely to the sound discretion of the trial judge 'who is on the scene and in much

---

[3] Cagle and Trooper Duncan testified the original surveillance footage did not have any sound.

[4] Chastain agreed to redact all but a few of the objectionable portions of Deputy Holmes' video deposition, so Holmes' contradictory testimony that the second collision occurred 41 seconds after the first collision was not presented to the jury.

better position than an appellate court to judge as to what is improper argument under the circumstances.'" *Howle v. PYA/Monarch, Inc.*, 288 S.C. 586, 599, 344 S.E.2d 157, 164 (Ct. App. 1986) (quoting *Lesley v. Am. Sec. Ins. Co.*, 261 S.C. 178, 185, 199 S.E.2d 82, 86 (1973)).  "[C]onsiderable latitude is allowed counsel in drawing inferences and deductions from the evidence and in arguing the same to the jury." *Lesley*, 261 S.C. at 185, 199 S.E.2d at 85.  "When [an] objection is timely made to improper remarks of counsel, the judge should rule on the objection, give a curative charge to the jury, and instruct offending counsel to desist from improper remarks." *McElveen v. Ferre*, 299 S.C. 377, 381, 385 S.E.2d 39, 41 (Ct. App. 1989).

Prior to closing argument, Watts sought a ruling to prevent defense counsel from commenting on the video.  The court stated:

> Whatever the video shows, you can certainly argue that as they can, but if the video does not show something, then you certainly cannot – because it almost would be testifying, and certainly you cannot do that. . . .  So I'll allow you to argue what is on the video, but if it's not on the video, then you can't add to it.

Watts asserts that defense counsel suggested in closing argument that the flashes of light in the video were the parties' vehicles as the collisions occurred.

> [DEFENSE COUNSEL]:  Now, Barton Holmes and Ms. King all say that Barton Holmes did a U-turn.  And if he did a U-turn, you could maybe see or expect where his lights would go.  So Barton Holmes, according – if he had his lights on would be traveling in Lane Number 1 and make a turn that would have taken him back in the direction or faced his vehicle back in the direction of Laurens.  I invite you to look at this video on Channel 5 and pay attention to what is happening before.  You see lights, I'm going to suggest, moving in each direction on 76.  Lights moving.  At some point in time, and I'm going to suggest to you it might be right around 58:07 that the video might show you some evidence that would indicate that there [were] lights that panned around in this direction and made possibly a U-turn.  But you decide that.

[PLAINTIFF'S COUNSEL]: Your Honor, we object to this testimony . . . about the video.

THE COURT: He can argue the video so long as he does not add anything to what the video may depict.

Watts also asserts defense counsel implied the jurors had been "trained" to be "detectives" in the case and asked the jurors to try to see things that are not on the video.

[DEFENSE COUNSEL]: I'm going to suggest to you – and I'm not asking you to review this thing bunches of times. You review it whenever you want. But there are images in there that I think are enlightening that will support and prove important facts in this case, and they will prove, I submit to you, that there were lights on Ms. King's vehicle, Barton Holmes had lights on, and that there was a significant – and you go with your calculations about the time delay between what this video shows as to what appears to be the collision involving Barton Holmes and Ms. King and then the later collision involving Ms. Watts. But I'm trying to give you kind of the heads-up, the narrative, invite you to look at it again with your trained eyes, 24 eyes. You may see fine things much different than me. I invite you to do that. But I offer this to you as evidence that I submit would indicate that there were lights on out there, there was a significant time delay between these two impacts, that other vehicles move through the area without any difficulty, and that [Ms.] Watts' vehicle sometime, multiple seconds later, you figure out when that is, she collides with the King vehicle. . . .

[PLAINTIFF'S COUNSEL]: Your Honor, we had specific directions about comments.

THE COURT: Again, he cannot add anything that is not depicted on the video.

Watts asserts defense counsel's argument improperly suggested to the jurors that they were "detectives" and the jury's duty was to uncover evidence that was not on the video.

Watts argues the defense offered its interpretation of the video, including things that were not depicted on the video, which was contrary to the court's directives and prejudicial to her. She also argues defense counsel's closing argument was improper because it compared the jurors to radiologists and detectives, which appealed to the jurors' emotions, personal beliefs, intuitions, passion, biases and prejudices. She also asserts no expert testimony was offered in this case to interpret the video, no witness identified any vehicle on the video, and no other evidence was offered from which the jury could make an inference that any of the vehicles involved in the collisions were depicted on the video. Also, Watts asserts the court's rulings on her objections compounded the prejudice to her because it signaled to the jury that the court agreed with defense counsel's implications that if they looked well enough they would see on the video that Watts caused the wreck, despite Deputy Holmes' unsafe U-turn. Further, she maintains the court's rulings on defense counsel's improper comments were not cured by the court's general instructions to the jury, because "immediate curative instructions" were necessary.

The trial court found there was no prejudice in defense counsel's closing argument and any remarks by counsel did not deprive Watts of a fair trial. It is within the sound discretion of the trial court to determine what is an improper argument under the circumstances. *Howle*, 288 S.C. at 599, 344 S.E.2d at 164. Our courts have held considerable latitude is allowed to counsel in arguing inferences and deductions from the evidence to the jury. *Lesley*, 261 S.C. at 185, 199 S.E.2d at 85. When Watts objected to the defense counsel's remarks she deemed improper, the court ruled on the objection and instructed counsel to desist from improper remarks. *See McElveen*, 299 S.C. at 381, 385 S.E.2d at 41 ("When objection is timely made to improper remarks of counsel, the judge should rule on the objection, give a curative charge to the jury, and instruct offending counsel to desist from improper remarks."). Thus, we do not find the trial court abused its discretion by denying her motion for a new trial or JNOV based on defense counsel's closing argument.

**CONCLUSION**

Accordingly, the decision of the trial court is

**AFFIRMED.**[5]

**WILLIAMS, C.J., and LOCKEMY, A.J., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.